IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,649

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY MICHAEL BRAZZLE,
*Appellant*.

SYLLABUS BY THE COURT

1.

If a defendant argues he or she lacked the intent to distribute drugs, evidence about a prior crime committed by the defendant may be material, especially if evidence establishes similarities between the prior crime and the charged crime.

2.

A party's failure to argue in a petition for review why the Court of Appeals erred in an invited error analysis means the party has waived any argument before this court as to why the invited error doctrine did not apply.

3.

Appellate courts weighing sufficiency do not distinguish between direct and circumstantial evidence in terms of probative value because a conviction of even the gravest offense can be based on circumstantial evidence. Thus, even if the State does not present direct evidence that a defendant charged with unlawfully possessing the

1

controlled substance oxycodone did not have a prescription for the drug, circumstantial evidence could establish the lack of a prescription.

4.

Proof of the identity of a substance by circumstantial evidence may be sufficient to affirm a conviction in a drug prosecution even if no scientific test results are admitted or available.

5.

Under K.S.A. 60-404, a timely interposed objection is required before this court can overturn a verdict because a district court erroneously admitted evidence.

Review of the judgment of the Court of Appeals in 55 Kan. App. 2d 276, 411 P.3d 1250 (2018). Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed July 10, 2020. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Rick Kittel,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Barry K. Disney*, senior deputy county attorney, argued the cause, and *James W. Garrison*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.: Anthony Michael Brazzle petitions this court for review of the Court of Appeals' decision affirming his drug-related convictions, including possession of

2

methamphetamine with intent to distribute and possession of oxycodone. He argues the district court erred in admitting K.S.A. 60-455 evidence related to two prior methamphetamine sales to undercover detectives about a week before the events at issue, the district court clearly erred in instructing the jury on possession of oxycodone, and insufficient evidence supported his conviction for possession of oxycodone.

We find no reversible error and affirm Brazzle's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

Law enforcement officers arrested Brazzle after he drove away from the Royal Inn, a hotel in Riley County. Law enforcement officers had the Inn under surveillance because they had learned about an uptick in drug usage and distribution at the hotel. The officers saw a car come to the hotel and leave about 10 to 15 minutes later. As the car pulled out of the parking lot, the driver, later identified as Anthony Brazzle, committed a traffic infraction. The officers followed Brazzle and initiated a traffic stop. Brazzle was alone in the vehicle. Brazzle first reported his name was Marcus Brazzle, but he eventually admitted he was Anthony Michael Brazzle.

During the stop, K9 Officer Andrew Toolin arrived and walked his dog around the vehicle. After the dog alerted, Toolin searched the vehicle. He found a small, gray pill under the driver's floorboard. Toolin identified the pill, which had a "K 57" marking on it, as oxycodone hydrochloride by using "a common method of drugs.com." Toolin said law enforcement officers in the United States use this website to identify pills. Toolin also found a glass smoking device with white residue under the driver's seat and brass knuckles in the front driver's door panel.

3

Underneath the passenger seat, Toolin found a plastic baggie containing a Crown Royal bag. The Crown Royal bag contained two small ziplock baggies of a crystal-like substance Toolin believed was methamphetamine; another glass smoking device; U.S. currency totaling $128; more small, gray pills with a "K 57" marking; and unused, small ziplock plastic baggies. Toolin testified that the baggie containing the Crown Royal bag was easily within reach of the driver's seat.

Toolin testified the two baggies with the crystal-like substance weighed 3.4 grams and 5.7 grams. Toolin said this was "a lot" of methamphetamine and, in his training and experience, these amounts were consistent with a distributable amount of methamphetamine. He added that a normal amount for a user to possess is anywhere from a quarter gram to a gram at a time.

Later testing performed by a Kansas Bureau of Investigation (KBI) forensic scientist confirmed the bags contained methamphetamine with a net weight of 2.98 grams and 5.28 grams, respectively. One of the glass smoking devices also tested positive for methamphetamine. No evidence established that the gray pills were tested.

Toolin testified, citing his training and experience, that smaller ziplock baggies are used to package illegal drugs. He also testified the $128 found with the methamphetamine was in denominations allowing a distributor to make change and drug dealers commonly store money used for that purpose with the drugs the dealer plans to distribute.

4

The State originally charged Brazzle with possession with intent to distribute methamphetamine, possession of drug paraphernalia, and criminal use of a weapon. The State later added a charge of unlawful possession of a controlled substance, oxycodone.

Before trial, the State filed a motion to determine admissibility of K.S.A. 60-455 evidence. The State sought to admit testimony from an undercover detective who had purchased methamphetamine from Brazzle about a week before his arrest. Following a hearing, the district court permitted the State to present this evidence to show whether Brazzle intended to distribute the methamphetamine found during the car stop.

At trial, over objection from Brazzle's attorney, the undercover detective testified he and his undercover partner had connected with Brazzle through another person who told the detective to come to the Royal Inn hotel. Once there, Brazzle sold the detectives 3.5 grams of methamphetamine for $200. A few days later, Brazzle offered to again sell methamphetamine to the testifying detective at Royal Inn, but the detective asked to move to a different location. The detective said he also received unused plastic baggies from Brazzle and the only reason to have these baggies is to distribute methamphetamine.

Brazzle presented no evidence.

The district court instructed the jury that the prior crime evidence could "be considered solely for the purpose of proving the defendant's intent with the controlled substances." The district court also instructed the jury on the statutorily created rebuttable presumption of an intent to distribute if any person possesses 3.5 grams or more of methamphetamine. See K.S.A. 2015 Supp. 21-5705(e)(2). And at Brazzle's request, the district court instructed the jury that possession with intent to distribute includes the

5

lesser offense of possession of methamphetamine. The jury convicted Brazzle on all counts as charged.

The district court denied Brazzle's motion for a departure sentence and sentenced Brazzle to 105 months' imprisonment for the primary offense of possession with intent to distribute methamphetamine. The district court ran Brazzle's other sentences concurrent with the 105-month sentence. During the same hearing, the district court ran the sentence concurrent with Brazzle's 55-month sentence in another case. And finally, the district court ran the concurrent sentences consecutive to Brazzle's 20-month sentence imposed based on a probation violation in an earlier case.

On direct appeal, the Court of Appeals affirmed Brazzle's convictions. *State v. Brazzle*, 55 Kan. App. 2d 276, 411 P.3d 1250 (2018). This court granted Brazzle's petition for review.

1.      ADMISSION OF K.S.A. 2019 SUPP. 60-455 EVIDENCE NOT ERROR

As announced in *State v. Gunby*, 282 Kan. 39, 57, 144 P.3d 647 (2006), K.S.A. 2019 Supp. 60-455 governs the admissibility of all evidence of other crimes and civil wrongs. K.S.A. 2019 Supp. 60-455 provides in relevant part:

> "(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

6

"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such
evidence is admissible when relevant to prove some other material fact including motive,
opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or
accident."

This court has instructed district courts to use a three-prong test when applying this provision and has identified the standard of review for each step.

First, the district court must determine whether the fact to be proven is material. Courts answer this question by considering whether the "fact has some real bearing on the decision in the case." *State v. Torres*, 294 Kan. 135, 139, 273 P.3d 729 (2012). An appellate court reviewing this determination gives no deference to the district court, examining this prong independently. *State v. Garcia-Garcia*, 309 Kan. 801, 811, 441 P.3d 52 (2019).

Second, a district court "must decide whether the material fact is disputed, and if so, whether the evidence at issue is relevant to proving the disputed material fact. In doing so, the trial court considers if the evidence has any tendency in reason to prove the disputed material fact." *Garcia-Garcia*, 309 Kan. at 811. In *Garcia-Garcia*, as in most other recent cases, we have identified the appellate standard for review as whether the district court committed an abuse of discretion. 309 Kan. at 811; see, e.g., *State v. Haygood*, 308 Kan. 1387, 1392, 430 P.3d 11 (2018); *State v. Richard*, 300 Kan. 715, 721, 333 P.3d 179 (2014); *Torres*, 294 Kan. at 139-40.

In other decisions, we have emphasized the relevancy aspect of this inquiry requires two assessments: "the probative value of the evidence to be admitted and whether that evidence is being admitted for the purpose of proving a material fact." *State v. Boggs*, 287 Kan. 298, 308, 197 P.3d 441 (2008). *Boggs* and other cases listing these two assessments identify a standard of review for each: "The probative value of the evidence is reviewed for an abuse of discretion; the materiality question requires a legal determination as to the elements or a particular offense and is therefore reviewed de novo." 287 Kan. at 308. These statements track those we use in any context when examining relevance. See, e.g., *State v. Robinson*, 306 Kan. 431, 435, 394 P.3d 868 (2017) (citing *State v. Shadden*, 290 Kan. 803, 817, 235 P.3d 436 [2010]).

Although not explaining the difference, the 60-455 cases that do not separately discuss the two aspects of relevance likely do not include the materiality review in this second prong simply because the court has already examined materiality in analyzing the first prong. Because we recognize that a side-by-side comparison of the two lines of cases might cause some momentary confusion, we clarify that the two approaches do not vary substantively.

Turning to the third prong, the district court must determine whether the risk of undue prejudice substantially outweighs the evidence's probative value. An appellate court again reviews this for abuse of discretion. *State v. Thurber*, 308 Kan. 140, 202, 420 P.3d 389 (2018). See also *State v. Satchell*, 311 Kan. ___, 2020 WL 3479152, at *7 (2020) (clarifying that the risk of undue prejudice must "substantially outweigh" the evidence's probative value, despite occasional shorthand references in some cases omitting the word "substantially").

8

If the evidence fulfills the three prongs, it is admissible, but the district court must give the jury a limiting instruction "telling the jury the specific purpose for which the evidence has been admitted (and reminding them that it may only be considered for that purpose)." *Torres*, 294 Kan. at 140; see *Haygood*, 308 Kan. at 1393.

### 1.1. *Evidence Material to Intent to Distribute*

Brazzle argues the district court erred by allowing the State to present evidence of his selling methamphetamine to undercover detectives twice about a week before the car stop. The parties, the district court, and the Court of Appeals primarily focused on our caselaw arising from charges of possession of drugs, which we often refer to as "simple" possession, as opposed to Brazzle's charged offense of possession with the intent to distribute. See *State v. Rosa*, 304 Kan. 429, 436-37, 371 P.3d 915 (2016); *Boggs*, 287 Kan. at 312; *State v. Graham*, 244 Kan. 194, 198, 768 P.2d 259 (1989) (cited in PIK Crim. 4th 51.030, Comment II, C[3]); *State v. Faulkner*, 220 Kan. 153, Syl. ¶ 3, 551 P.2d 1247 (1976); *State v. Bly*, 215 Kan. 168, 176, 523 P.2d 397 (1974), *overruled on other grounds by State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976), *disapproved on other grounds by Gunby*, 282 Kan. at 54-55.

But in *State v. Preston*, 294 Kan. 27, 33, 272 P.3d 1275 (2012), we observed that the analysis of the materiality and relevance of 60-455 evidence might be different when the charge is possession with intent to distribute as opposed to simple possession. *Preston* did not further discuss the issue because the parties' arguments made no distinction. Here, they do.

9

The State contends that Brazzle, through his counsel, argued his possession, if any, was simply for personal use rather than distribution. The State argues the prior crime evidence was relevant to Brazzle's intent to distribute the drugs. Cf. 294 Kan. at 33. The State also argues our 60-455 caselaw on simple possession—citing most specifically the reasoning in *Boggs*, 287 Kan. 298—should not guide the outcome here. The State accurately notes that in *Boggs* and similar cases "possession proved the offense." In other words, the other crimes evidence simply proved propensity. But, as the State argues, "the fact or material element of intent to distribute was not obvious from the mere fact the Defendant was in possession of the controlled substance." Rather, for example, evidence that a defendant repeatedly used a particular location for or method of distributing drugs might bear on a jury's decision about whether the possession was intended for distribution rather than personal use.

The Court of Appeals found merit to the distinction, explaining that "[n]ot only was Brazzle's knowledge of the contraband and intent to exercise control over the contraband questioned *but so was his intent in possessing the contraband, i.e., whether he intended the drugs and contraband for personal use or for distribution.*" (Emphasis added.) 55 Kan. App. 2d at 280. The panel held evidence of Brazzle's prior methamphetamine sales, "a week prior to his arrest in this case at a location he had just left before the traffic stop in this case is highly probative of his intent to distribute the methamphetamine he possessed rather than to possess it for personal use." 55 Kan. App. 2d at 280. We agree that Brazzle both put the issue of intent to distribute in dispute and that the evidence was material.

As to the question of whether the issue was disputed, Brazzle's counsel acknowledged before trial that "obviously the intent or possession is the big issue in this

case." Then, during the trial, Brazzle's counsel requested and received an instruction on simple possession as a lesser included offense of possession with intent to distribute. See *State v. Bate*s, No. 117,419, 2019 WL 1412600, at *9 (Kan. App. 2019) (unpublished opinion) ("simple possession is a lesser included offense of the crime of possession with intent to distribute"). And during closing argument, his counsel argued baggies alone were not enough to show that someone intended to distribute.

As to the point of whether this dispute impacts the admissibility of the other crimes evidence, we note that this appears to be an undecided question in Kansas, at least post-*Gunby*. The parties do not cite, nor have we found, a post-*Gunby* case from this court addressing this exact issue. A case from the Court of Appeals addressing a limiting instruction issue has reasoned that a jury could infer the defendant's intent to distribute the marijuana from evidence of prior sales of marijuana. *State v. Pearson*, No. 114,298, 2017 WL 1367030, at *6 (Kan. App. 2017) (unpublished opinion). But in that case, the parties agreed the evidence was admissible to prove intent, and the issue before the Court of Appeals was whether the lack of a limiting instruction amounted to reversible error.

Courts from other jurisdictions have reached the same holding as did the Court of Appeals, however. One example is *Trujillo v. State*, 2 P.3d 567, 572 (Wyo. 2000).

There, the defendant argued the district court erroneously admitted evidence of his prior drug transactions in a prosecution for possession of marijuana and possession with intent to deliver psilocybin mushrooms. The defendant admitted he possessed the marijuana and mushrooms, but his defense, announced by his counsel during opening statement, was that he possessed the mushrooms for personal consumption.

11

On appeal, the Wyoming Supreme Court held "[e]vidence establishing that Trujillo had engaged in narcotics transactions, one as a seller and another in which he would be 'fronted' a pound of marijuana, was . . . particularly relevant to the issue of intent." 2 P.3d at 572. See also *United States v. Robison*, 904 F.2d 365, 368 (6th Cir. 1990) (when defendant asserted that he was only a user of drugs, prior evidence suggesting previous drug deals was admissible to prove intent in prosecution for conspiracy to distribute cocaine and possession with intent to distribute cocaine). While arguably Brazzle's arguments were more subtle, his attorney clearly placed in issue the question of whether Brazzle was guilty of "simple" possession or possession with the intent to distribute.

Given this dispute, the prior crimes evidence could be material to the question of whether Brazzle intended to personally use the drugs or to distribute them. We say "could be" because other crimes evidence may not always be material to prove an intent to distribute. Here, we conclude the similarity between the prior crimes evidence and the evidence of the alleged crime bears on the decision of whether Brazzle intended to distribute the methamphetamine. *State v. Faulkner*, 220 Kan. 153, 157, 551 P.2d 1247 (1976) ("The similarity of offenses is a key factor in relevancy."). See generally *State v. Seacat*, 303 Kan. 622, 629-31, 366 P.3d 208 (2016) ("reaffirm[ing] the principle that K.S.A. 2014 Supp. 60-455[b] is an inclusionary rule" and "subject to limited exceptions, evidence of prior crimes or civil wrongs *is* admissible if it proves some other material fact").

## 1.2.    *Evidence's Probative Value*

Next, we must consider whether the evidence was probative. "Probative evidence is evidence that furnishes, establishes, or contributes toward proof." *Preston*, 294 Kan. at 34. The Court of Appeals held that the prior sales were "highly probative" of Brazzle's "intent to distribute the methamphetamine he possessed rather than to possess it for personal use." 55 Kan. App. 2d at 280.

We agree. Brazzle had sold methamphetamine to undercover detectives at the Royal Inn, the location Brazzle was leaving when he committed the traffic offense that led to the search of his car. On another occasion, Brazzle invited detectives to the Inn to purchase more drugs, but the detectives asked to move to another location. During one of these transactions, Brazzle sold 3.5 grams—the amount that creates a rebuttal presumption of an intent to distribute. Brazzle also provided baggies. The detective testified the baggies were for distributing methamphetamine. Both prior transactions were close in time to the crimes charged.

We conclude that under these facts the prior crimes evidence was probative of whether Brazzle had the intent to distribute.

## 1.3.    *Risk for Undue Prejudice Did Not Substantially Outweigh Probative Value*

Brazzle finally argues the unduly prejudicial effect of the evidence far outweighed its probative value. "[T]o demonstrate an abuse of discretion, [Brazzle] must show that unfair or undue prejudice arising from the admission of the evidence substantially outweighed its probative value." *State v. Vasquez*, 287 Kan. 40, 53, 194 P.3d 563 (2008).

13

This court has recognized at least three types of prejudice that can arise from other crimes and civil wrong evidence:

> """First, a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed."'" *Gunby*, 282 Kan. at 48-49 (quoting *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 [1973]).

Recently, in a sex crime case involving evidence under 60-455(d), this court discussed nonexclusive factors a district court should consider in evaluating probative value and prejudicial effect to protect due process rights:

> "In evaluating the probative value of evidence of other crimes or civil wrongs, the district court should consider, among other factors: how clearly the prior act was proved; how probative the evidence is of the material fact sought to be proved; how seriously disputed the material fact is; and whether the government can obtain any less prejudicial evidence. In evaluating the possible prejudicial effect of evidence of other crimes or civil wrongs, the district court should consider, among other factors: the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct." *State v. Boysaw*, 309 Kan. 526, 541, 439 P.3d 909 (2019).

Even more recently, in a case that did not involve a sex crime, this court encouraged district courts to state on the record the factors considered in weighing the admissibility of 60-455(b) evidence and to use the nonexclusive *Boysaw* factors. *State v. Claerhout*, 310 Kan. 924, 930-31, 453 P.3d 855 (2019). But *Claerhout* ultimately held that a "generalized, superficial weighing" of probative value against undue prejudice was not necessarily reversible error if an appellate court could find such a deficiency harmless. 310 Kan. 924, 930-31. But see Concannon, Evidence, Kansas Annual Survey of Law, 141-42 (KBA 2020) (noting *Claerhout* did not explain why the *Boysaw* factors applied to a case that did not include a charge of a sex offense).

The district court and the Court of Appeals decided Brazzle's case before *Boysaw* and *Claerhout* were published. Neither court thus discussed the *Boysaw* analysis. Given that and given *Claerhout*'s holding that superficial analysis can be deemed harmless, we need not dwell on whether the district court should have considered the *Boysaw* factors because any failure to do so was harmless.

Even without evidence of the prior crimes, the State presented evidence from which the jury could deduce that Brazzle intended to distribute methamphetamine: the quantity of the drugs and the possession and distribution of baggies. As to the quantity, as previously noted, K.S.A. 2015 Supp. 21-5705(e)(2) creates "a rebuttable presumption of an intent to distribute if any person possesses . . . 3.5 grams or more of heroin or methamphetamine." See 2 Uelmen and Haddox, Drug Abuse and the Law Sourcebook § 8:2 ("Certainly the most relevant factor in establishing an intent to distribute is the quantity of the drug possessed. Does it exceed what an ordinary user would possess for his own personal use?"). Evidence at trial established that one of the seized bags contained 2.98 grams of methamphetamine and the other 5.28 grams. As to the baggies,

15

Toolin testified the baggies found in the Crown Royal bag were, in his training and experience, an indication that the plan was to distribute the drugs.

Yet the other crimes evidence of prior sales strengthened the inference of intent to distribute. Not only did Brazzle distribute the drugs to the undercover detectives, he provided them with unused baggies. One of these detectives echoed Toolin's opinion that the presence of baggies suggested the plan was to distribute the drugs.

We must weigh this probative value against the potential prejudice. The evidence could have led to the jury exaggerating the value of the prior crime evidence as proving Brazzle intended to distribute methamphetamine because he had distributed it before— once a drug dealer, always a drug dealer. Cf. *State v. Everett*, 296 Kan. 1039, 1047-48, 297 P.3d 292 (2013) (prior crimes evidence "was like putting a neon sign over Everett that read, 'propensity to manufacture methamphetamine'"). But the jury instruction given by the district court mitigated this prejudice by telling the jury to consider the prior sales solely for proving intent. On balance, under an abuse of discretion standard, when one of the major issues in the case was whether Brazzle's intent was possession or distribution, we conclude the district court did not abuse its discretion.

We hold that the district court did not err in admitting the prior crimes evidence under K.S.A. 60-455.

2.     INVITED ERROR PRECLUDES BRAZZLE'S JURY INSTRUCTION CLAIM

Brazzle argues the jury instruction on possession of oxycodone was clearly erroneous because it did not require the jury to find that he illegally possessed oxycodone

without a prescription. The Court of Appeals held that because Brazzle advocated for the version of the instruction the district court gave to the jury, he could not claim error on appeal. *Brazzle*, 55 Kan. App. 2d at 281-82. Brazzle's petition for review sets out the same arguments he raised to the Court of Appeals and does not address the Court of Appeals' invited error holding.

We hold Brazzle's failure to argue in his petition for review why the Court of Appeals erred in its invited error analysis means he has waived any argument he might have as to why the invited error doctrine did not apply. See Supreme Court Rule 8.03(a)(4)(C) (2018 Kan. S. Ct. R. 53) ("The court will not consider issues not presented or fairly included in the petition."); *State v. Tims*, 302 Kan. 536, 539-40, 355 P.3d 660 (2015) (noting that defendant's failure to seek review over procedural and jurisdictional conclusions on petition for review constitutes a waiver of those issues, but considering appeal on question reserved). Cf. *State v. Fleming*, 308 Kan. 689, 694, 423 P.3d 506 (2018) ("Before the Court of Appeals and us, Fleming presents four reasons the invited-error doctrine should not apply."). See also *State v. Sasser*, 305 Kan. 1231, 1235, 391 P.3d 698 (2017) ("Whether the invited error doctrine applies is a question of law over which this court has unlimited review.").

3.   SUFFICIENT EVIDENCE SUPPORTS BRAZZLE'S POSSESSION OF OXYCODONE CONVICTION

Brazzle next challenges the sufficiency of the evidence to support his conviction for possession of oxycodone. This issue arises because it would have been legal for Brazzle to possess the oxycodone if the drug had been properly prescribed for him. See K.S.A. 2015 Supp. 21-5706(a); K.S.A. 2015 Supp. 21-5702(b); K.S.A. 2015 Supp. 65-

4116(c)(3). Brazzle argues (1) the State presented no evidence showing he did not have a prescription for oxycodone and (2) the only evidence establishing that the pills were oxycodone was Toolin's testimony about comparing a pill to an image identified as oxycodone on drugs.com.

### 3.1.    *Standard of Review*

A portion of Brazzle's sufficiency of the evidence challenge hinges on statutory interpretation, a question of law subject to unlimited review. *State v. Chavez*, 310 Kan. 421, 425, 447 P.3d 364 (2019). Once this court interprets the relevant statutes, the remaining question is whether the State presented sufficient evidence to support Brazzle's possession of oxycodone conviction. "'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *Rosa*, 304 Kan. at 432-33.

### 3.2.    *Sufficiency of Evidence Regarding Prescription*

The parties and the Court of Appeals discuss whether the State had to establish that the defendant did not have a prescription for oxycodone or whether Brazzle had to present an affirmative defense and prove he did. We need not delve into the complex statutory construction issue about whether the existence of the prescription is an affirmative defense. That is because, at the heart of Brazzle's argument, is his assertion the State failed to present sufficient evidence because it did not present direct evidence that he did not have a prescription for oxycodone.

18

But it is a well-established principle that appellate courts weighing sufficiency do not distinguish "'between direct and circumstantial evidence in terms of probative value' because '"[a] conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference."' [Citations omitted.]" *State v. Rizal*, 310 Kan. 199, 209-10, 445 P.3d 734 (2019).

Here, circumstantial evidence suggests the oxycodone was part of Brazzle's illicit drug inventory. He stored methamphetamine, currency, most of the discovered oxycodone pills, and unused plastic bags in a Crown Royal bag that was inside a plastic bag. Another pill was found loose under the driver's floorboard. See *State v. Stank*, 288 Wis. 2d 414, 439, 708 N.W.2d 43 (2005) (listing several factors supporting sufficiency of illegal distribution of oxycodone, including proximity to large quantities of other drugs and cash). While the district court did not task the jury with determining whether Brazzle intended to distribute the oxycodone, we hold the same factors provide circumstantial evidence that Brazzle's possession was illegal. The jury could infer that if the bag contained drugs that Brazzle intended to distribute he would not put his own prescription medications in the same bag.

3.3.    *Sufficient Evidence Establishes the Pills Were Oxycodone*

Finally, Brazzle argues that Officer Toolin's testimony about comparing the appearance of the pills to an image of a pill identified as oxycodone on drugs.com could not prove the pills were oxycodone.

Both parties cite *State. v. Northrup*, 16 Kan. App. 2d 443, 825 P.2d 174 (1992), a case of first impression in Kansas in which the Court of Appeals held that "proof of the identity of a substance by circumstantial evidence may be sufficient in a drug prosecution where no chemical tests are admitted or available." 16 Kan. App. 2d at 449. Northrup challenged the sufficiency of the evidence supporting his conviction for possession and sale of marijuana to an informant. At trial, the district court denied the State's attempt to admit the alleged marijuana into evidence. And no expert testimony or laboratory analysis was admitted that identified the substance as marijuana.

The *Northrup* Court of Appeals panel reasoned that, although "scientific chemical analysis of a substance will provide the most reliable evidence as to the identity of that substance," such evidence is not the only evidence that will sustain a criminal conviction. The panel followed the path of many other jurisdictions that had "concluded that the proof of marijuana or another controlled substance may be sustained by circumstantial evidence." 16 Kan. App. 2d at 448-49. See also *Robinson v. State*, 348 Md. 104, 113, 702 A.2d 741 (1997) ("[T]he great weight of authority from other state and federal courts recognizes that circumstantial or indirect evidence may be sufficient, standing alone, to establish the nature of a controlled substance."); *Urrutia v. State*, 924 P.2d 965, 968 (Wyo. 1996) ("The prosecution may rely on circumstantial evidence to prove the identity of the controlled substance because 'unlawful distribution of a substance, which by its nature is to be consumed, should not escape prosecution because the state could not seize a sample of the substance.'"). But see *State v. Jones*, 216 N.C. App. 519, 526, 718 S.E.2d 415 (2011) ("'[S]cientifically valid chemical analysis [, rather than visual inspection,] is required' to identify controlled substances that are defined in terms of their chemical composition.").

20

At one point, Brazzle argues that a prescription drug can be identified only by its chemical structure; but he also recognizes *Northrup* held circumstantial evidence may be sufficient. His main argument seems to be that the circumstantial evidence presented here was insufficient.

In *Northrup*, the panel discussed "a leading case in this area," *United States v. Dolan*, 544 F.2d 1219 (4th Cir. 1976), where the Fourth Circuit set out nonexclusive factors to consider in determining if the State presented sufficient proof:

> "'Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence. [Citations omitted.]'" 16 Kan. App. 2d at 453 (quoting *Dolan*, 544 F.2d at 1221).

See also *State v. Chapman*, 252 Kan. 606, 618, 847 P.2d 1247 (1993) (discussing *Northrup* and the *Dolan* factors to determine whether there was sufficient evidence to bind the defendant over on methamphetamine-related charges).

Brazzle argues that considering these factors, the only one touched on by the State in his case was the appearance of the pills. The State counters that uncontroverted testimony established that the oxycodone was located next to a large quantity of methamphetamine, baggies, and currency. While not explicitly enumerated as factors in *Northrup* and *Dolan*, those cases made clear that the list was nonexclusive, and the

21

factors mentioned by the State seem relevant to proving that the pills were some type of controlled substance.

Here, there was no objection to Toolin's testimony regarding how he identified the pill found on the driver's side of the car as oxycodone "[u]sing a common method of drugs.com," which he said law enforcement in the United States use to identify pills. And the State points out that there was no objection to the pills being entered into evidence. At trial, the State introduced both the pill found on the driver's side of the car and the other pills with the same appearance and markings found with the methamphetamine. Moreover, although not mentioned by the State, Toolin testified that he received training to become a police officer and to become a K9 handler. He also said that as a K9 handler, he has contact with controlled substances regularly.

The Court of Appeals majority noted this was an issue of first impression, but that other courts generally address reliance on physical characteristics and a website to identify a pharmaceutical drug in terms of hearsay exceptions or witness qualifications. *Brazzle,* 55 Kan. App. 2d at 283. According to the majority, any defect in Toolin's testimony related to unpreserved evidentiary issues: "the State's alleged failure to qualify him as an expert, for his lack of foundation to testify about the identity of the pills, and for the hearsay nature of the information upon which he relied." 55 Kan. App. 2d at 284. It also held Toolin's testimony, assuming it was admissible, "provided the jury with uncontroverted evidence that the gray pills found in the vehicle were oxycodone hydrochloride," which was sufficient for the jury to conclude that the gray pills were oxycodone hydrochloride. 55 Kan. App. 2d at 284.

22

Judge Atcheson dissented on this point and would have reversed Brazzle's possession of oxycodone conviction for insufficient evidence. He found Toolin's testimony required the jurors to "guess about how Officer Toolin managed this Internet magic." He reasoned that the State had not presented evidence about "what drugs.com is, what kind of information it offers, who sponsors it, or why it might be reliable" in identifying drugs or how Toolin went about identifying the drugs on the website. 55 Kan. App. 2d at 288 (Atcheson, J., concurring in part and dissenting in part). Judge Atcheson also challenged the majority's reasoning that other courts who have considered this issue have generally addressed it in terms of hearsay exceptions or witness qualifications, arguing the cases cited did not apply. 55 Kan. App. 2d at 288-89 (Atcheson, J., concurring in part and dissenting in part).

Judge Atcheson's points go to the foundation of the evidence and the weight of Toolin's testimony that the pills were oxycodone. The court admitted his testimony on this point without objection. A timely interposed objection is required before we can overturn a verdict because the district court improperly admitted evidence. See K.S.A. 60-404 ("A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."); see *State v. Ballou*, 310 Kan. 591, 612-14, 448 P.3d 479 (2019). And we must disregard Officer Toolin's testimony for us to say the evidence was insufficient.

If Brazzle had challenged this issue in the district court, the State would have had a chance to answer the questions Judge Atcheson and Brazzle raise and the district court could have determined whether the State did enough to establish a proper foundation for

23

Toolin's opinion. If not, the district court could have sustained an objection to the testimony.

We thus agree with the majority that Brazzle has tried to recast an evidentiary ruling as a sufficiency argument. But, given Toolin's testimony, the evidence was sufficient.

In summary, when we review the evidence in a light most favorable to the State, we determine that a rational fact-finder could have found Brazzle guilty beyond a reasonable doubt.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

HENRY W. GREEN, J., assigned.[1]
STEVE LEBEN, J., assigned.[2]

_____

[1]**REPORTER'S NOTE:** Judge Green, of the Kansas Court of Appeals, was appointed to hear case No. 116,649 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

[2]**REPORTER'S NOTE:** Judge Leben, of the Kansas Court of Appeals, was appointed to hear case No. 116,649 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.