NOT DESIGNATED FOR PUBLICATION

No. 128,170

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEYUNTAE HERRED,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SHAWN ELLIOTT, judge. Oral argument held July 8, 2025. Opinion filed September 12, 2025. Affirmed.

*Brandon G. Kinney*, of Kinney and Associates, LLC, of Kansas City, Missouri, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., MALONE and PICKERING, JJ.

PER CURIAM: Keyuntae Herred appeals his conviction of speeding 67 miles per hour in a 50-mile-per-hour zone, claiming there was insufficient evidence to support his conviction. He argues the district court erred by relying on the radar evidence to find him guilty of speeding. After careful review, we find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2023, Herred was driving a semitruck through a 50-mile-per-hour construction zone on I-135 in Wichita. At the same time, Kansas Highway Patrol Trooper Bryan Wade was monitoring the speed of passing vehicles, including the semitruck. Wade noticed that the semitruck was travelling faster than surrounding traffic and proceeded to stop Herred. The trooper cited Herred with speeding 68 miles per hour in a 50-mile-per-hour construction zone. Herred challenged the citation, and the case proceeded to a bench trial in July 2024.

At the bench trial, Wade testified about his actions leading up to citing Herred for speeding. At the beginning of his shift, Wade, who uses a certified LiDAR unit to measure speed, checked the LiDAR unit for accuracy. The accuracy test began with an internal function test where, upon powering on, the LiDAR unit would test its own calibration and circuitry. If the LiDAR unit detected any problems during this part, it would not complete the power-on process. According to Wade, his LiDAR unit had never failed to complete that beginning phase of the test. Wade testified that on the day of Herred's speeding citation, the LiDAR unit was operating "[a]bsolutely perfect."

After the initial power-on test, Wade would test "known distances," which meant he would point the LiDAR unit at a tree and a utility pole to ensure the device was accurately measuring distances. The LiDAR unit would measure distance based on the time it took for the unit's light signal to go out, reflect on the target, and come back to the unit. When locked onto a moving vehicle, the LiDAR unit would continuously measure speed based on the change in distance from the LiDAR unit to the vehicle over a certain period of time.

Wade testified that he observed Herred's semitruck "for a considerable period of time" and used his LiDAR unit to track its speed. Wade pointed the LiDAR laser on the

2

semitruck's front bumper, and the LiDAR unit gave an initial reading of 68 miles per hour. The speed reading remained unchanged as Wade tracked the semitruck for around a quarter of a mile. The posted speed limit was 50 miles per hour due to construction. Wade also testified that the LiDAR unit was not tracking other vehicles' speeds because the LiDAR unit "is a very target specific instrument, so it has essentially no room for error, as far as target identification."

When asked how his range test on a stationary object translated to proper functioning when tracking a moving object, Wade explained that the LiDAR unit had two modes: range function and speed function. Because the only difference between the two modes was a change in variable—"the speed of light as the known speed" for the range function, and "a known distance" for the speed function—proper functioning in range mode would also ensure proper functioning in speed mode. The LiDAR unit's speed calculations were designed to be accurate within plus or minus 1 mile per hour. Wade had never encountered an error in the LiDAR unit's distance measurements or speed calculations.

On cross-examination, Wade acknowledged that his LiDAR unit was at least 20 years old. The 2011 calibration certificate was the most recent one for that LiDAR unit, though Wade testified that he checks LiDAR's calibration daily. Wade's normal practice is to use his LiDAR and radar units almost simultaneously, activating his radar "almost the next second" after activating his LiDAR. When Wade tracked Herred's semitruck, however, he was only using his LiDAR. Wade testified that he did not know why he only used his LiDAR on that occasion.

During closing argument, the State asked the district court to find Herred guilty of speeding at 68 miles per hour. Herred argued that he was guilty of speeding at 63 miles per hour, citing Wade's testimony that, just by observing a vehicle himself, he could estimate the vehicle's speed within 5 miles per hour. Herred attacked the LiDAR unit's

accuracy given the LiDAR's age, the amount of time since its last calibration certification, and the lack of a simultaneous radar reading to compare against the LiDAR.

The district court found Wade credible and adopted his testimony that "if the internal checks are saying that the LiDAR is working and the officer does the morning checks or the daily checks and it is responding to the distance, it's necessarily going to be accurate as to the speed, as well." The district court found the LiDAR unit's reading was accurate. The court rejected Herred's suggestion of measuring speed by Wade's observation, whereby he would be guilty of speeding at 63 miles per hour. The district court factored in the LiDAR unit's margin of error—plus or minus 1 mile per hour—and found Herred guilty of speeding at 67 miles per hour. The court imposed a $75 fine and $110 in court costs.

Herred now appeals.

LEGAL ANALYSIS

*Standard of Review*

A defendant is not required to challenge the sufficiency of the evidence at trial in order to raise that issue on appeal. *State v. Valdiviezo-Martinez*, 313 Kan. 614, 624, 486 P.3d 1256 (2021). When a defendant challenges the sufficiency of the evidence, appellate courts decide whether a rational fact-finder could find the defendant guilty beyond a reasonable doubt, viewing the evidence in a light most favorable to the State. Appellate courts do not reweigh the evidence, resolve conflicts in the evidence, or reassess witness credibility. *State v. Anderson*, 318 Kan. 425, 441, 543 P.3d 1120 (2024).

4

*Discussion*

Herred frames this issue as a challenge to the sufficiency of the evidence. The State responds that Herred is attempting to challenge the admission of the LiDAR evidence for the first time on appeal, pointing out that Herred did not object to the LiDAR evidence at trial. See K.S.A. 60-404; *State v. Showalter*, 318 Kan. 338, 345, 543 P.3d 508 (2024). Still, the State argues that the evidence was sufficient to support Herred's speeding conviction.

The Supreme Court considered whether an insufficiency of the evidence claim was actually an admission of evidence claim in *State v. Brazzle*, 311 Kan. 754, 466 P.3d 1195 (2020). There, Brazzle argued there was insufficient evidence to support his conviction for possession of oxycodone. At trial, the investigating officer, Officer Andrew Toolin, testified that he had compared the pills in Brazzle's possession to an internet photo of oxycodone to establish that the pills were actually oxycodone.

On appeal, Brazzle challenged the sufficiency of evidence based on the officer's testimony. The Supreme Court determined that the challenge to the officer's testimony—namely that the reliability of the internet photo comparison was unclear—went to foundation. 311 Kan. at 770. While the court found Brazzle "tried to recast an evidentiary ruling as a sufficiency argument," the court found the evidence sufficient due to Toolin's testimony and affirmed Brazzle's possession conviction. 311 Kan. at 771.

Other panels of this court have recently confronted similar disputes in speeding cases. In *State v. Weber*, No. 126,376, 2024 WL 2795765 (Kan. App. 2024) (unpublished opinion), Weber argued on appeal that there was insufficient evidence to support his speeding conviction. He claimed the district court erred in relying on radar evidence due to the amount of time since the radar's last calibration and the police officer's lack of recertification to use the radar. The *Weber* panel interpreted Weber's argument as

5

challenging the foundation for the radar evidence. The panel concluded that because Weber did not object to the radar evidence at trial, he could not challenge foundation, "including any minimum certification or recertification issues." 2024 WL 2795765, at *3.

This issue resurfaced in *State v. Ray*, No. 126,634, 2025 WL 734055 (Kan. App. 2025) (unpublished opinion). Ray challenged the sufficiency of the evidence for his speeding conviction by claiming the district court improperly used a rebuttable presumption that the radar unit was accurate. The State responded that Ray could not challenge the radar evidence since he did not object to it. The *Ray* panel found Ray was not challenging the foundation of the radar evidence, noting Ray did not cite cases on the foundation test for radar evidence. Instead, because Ray argued "the district court gave too much credence" to the officer's testimony on his radar unit, the panel determined there was no preservation issue. 2025 WL 734055, at *2; see also *State v. Bahney*, No. 126,055, 2024 WL 657925, at *2 (Kan. App. 2024) (unpublished opinion) (declining to address State's preservation arguments, finding ruling on sufficiency of evidence resolved dispute).

As we saw in similar speeding ticket cases, such as *Ray* and *Bahney*, Herred's argument appears to repackage an admission of evidence issue as a sufficiency of the evidence issue. Herred attempts to frame this issue as sufficiency of the evidence although he does challenge the foundation for the LiDAR evidence. Herred argues that "the State's equipment should not be relied upon to determine the speed of the Defendant." Essentially, Herred argues that the district court erred in relying on the evidence of Wade's LiDAR unit reading. He asserts there should be evidence of the LiDAR unit's recent calibration before the district court can rely on the LiDAR unit's reading. He does not claim the district court applied an improper presumption of reliability. We shall review his claim that the evidence is insufficient to support his conviction for speeding. See *Bahney*, 2024 WL 657925, at *2.

6

Traffic infractions are strict liability offenses. See *State v. Lewis*, 263 Kan. 843, 857-58, 953 P.2d 1016 (1998). K.S.A. 8-1558(a) makes it unlawful to drive in excess of specified speed limits. Under K.S.A. 8-1559(c) and K.S.A. 8-1560(f), speed limits may be altered in construction zones. The speed limit in this case was reduced to 50 miles per hour for construction activity.

Herred claims the district court erred in relying on the LiDAR evidence to find him guilty of speeding at 67 miles per hour. He argues that he should instead be found guilty of speeding at 63 miles per hour. The State responds that Herred is asking us to reweigh the evidence.

Other panels of this court have found sufficient evidence of speeding where the officer who issued the speeding citation testified that he or she tested the speed measuring equipment's accuracy and was certified to use such equipment. See *Ray*, 2025 WL 734055, at *5; *Weber*, 2024 WL 2795765, at *6.

Here, Herred does not dispute that he was speeding. He argues that he should instead be found guilty of speeding at 63 miles per hour based on Wade's testimony that he could estimate a vehicle's speed within 5 miles per hour by his own observation. But this argument still recognizes that the LiDAR unit was accurate to some extent. By adopting the low end of Wade's personal estimate within 5 miles per hour, Herred's assertion still assumes his actual speed was 68 mph.

The district court weighed the evidence of the LiDAR unit's reading against Herred's argument that the court should adopt the low end of Wade's estimate based on his observation. The district court also heard the evidence that the LiDAR unit was at least 20 years old and was last certified for calibration in 2011. Herred's argument asks us to reweigh the evidence to find Wade's personal observation of the semitruck more credible than the LiDAR reading. Appellate courts do not reweigh evidence when

7

reviewing the sufficiency of the evidence. *Anderson*, 318 Kan. at 441. The evidence here shows that a rational fact-finder could have found Herred guilty of speeding at 67 miles per hour. In light of the sufficient evidence, we conclude the district court properly found Herred guilty of speeding.

Affirmed.