NOT DESIGNATED FOR PUBLICATION

No. 128,518

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS JORDAN JEFFREY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; BENJAMIN J. SEXTON, judge. Oral argument held January 6, 2026. Opinion filed March 13, 2026. Convictions affirmed, sentences vacated in part, and case remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Travis Jordan Jeffrey timely appeals from his conviction and sentence for unlawful possession of tetrahydrocannabinol (THC). On appeal he argues: (1) The State failed to prove the THC he possessed was illegal because it provided no evidence that the concentration of the THC in the sample examined exceeded .03% on a dry weight basis; (2) the district court erred in declining his request to instruct the jury on the difference between industrial hemp and illegal THC; and (3) the district court erred in

1

sentencing him to a longer term of probation than allowed without making the necessary findings to do so.

After careful review, we find the State presented both direct and circumstantial evidence to show Jeffrey unlawfully possessed THC. We further find the district court did not err in the way it instructed the jury on possession of THC. However, we agree the district court did not make the necessary findings to impose an extended term of probation. Accordingly, we affirm his conviction but vacate his probation sentence and remand for resentencing on his term of probation.

FACTUAL AND PROCEDURAL BACKGROUND

For acts occurring in February 2024, Jefferey was charged with one count each of aggravated domestic battery, possession of marijuana (third offense) and/or THC, possession of drug paraphernalia, two counts of aggravated residential burglary, three counts of kidnapping, criminal restraint, and simple domestic battery.

Jeffrey was initially arrested for domestic offenses. During the arrest, the officer conducted a search of Jeffrey's person and found two pipes. The officer described the pipes as "a cylindrical smoking apparatus with a black, burnt residue on the inside." The residue in one of the pipes was later tested by an analyst at the Kansas Bureau of Investigation (KBI). The KBI analyst testified the residue contained THC, although she did not know the concentration of THC in the residue because she did not test for it. She acknowledged the residue could have been from burnt industrial hemp, which she testified was not illegal if the concentration of THC was less than 0.3%.

The matter proceeded to a jury trial where the district court granted directed verdicts of acquittal on the aggravated residential burglary and kidnapping charges. The remaining charges were submitted to the jury, which acquitted Jeffrey of aggravated

2

domestic battery and criminal restraint but convicted him of possession of THC and possession of drug paraphernalia. The jury hung on the simple domestic battery charge, which was later dismissed by the State.

The jury was instructed only on possession of THC. The jury was not instructed on possession of marijuana even though it was listed as an alternative offense in the charging document. The district court denied Jeffrey's request to instruct the jury it had to find he "possessed an illegal version of tetrahydrocannabinol."

The district court imposed a sentence of 40 months' imprisonment for possession of THC but granted Jeffrey's motion for dispositional departure and suspended his sentence to 18 months' supervised probation. The district court imposed a concurrent six-month jail sentence for possession of drug paraphernalia. Additional facts are set forth as necessary.

ANALYSIS

*Sufficiency of the Evidence*

Before us, Jeffrey only appeals his conviction and sentence for possession of THC. Jeffrey argues the evidence was insufficient to support his conviction for possession of THC because the State failed to prove the concentration of THC in the sample examined by the KBI was more than 0.3% THC on a dry weight basis. He does not challenge the sufficiency of the evidence underlying his conviction for possession of drug paraphernalia; therefore, he has waived and abandoned that point. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

3

*Standard of Review*

"When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

To the extent we must engage in statutory interpretation to resolve this issue, it presents a question of law subject to unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained.

"An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words." *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

Where there is no ambiguity, we need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous do we use canons of construction or legislative history to construe the Legislature's intent. *State v. Betts*, 316 Kan. 191, 198, 514 P.3d 341 (2022). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* to reconcile and "bring various provisions . . . into workable harmony, if possible." *State v. Strong*, 317 Kan. 197, 203, 527 P.3d 548 (2023). We "must construe statutes to avoid absurd or unreasonable results," and we "presume the Legislature does not intend to enact meaningless legislation." *State v. Gomez*, 320 Kan. 3, 15, 561 P.3d 908 (2025).

4

*Discussion*

Jeffrey presents this issue largely as a question of statutory interpretation, asserting:

> "K.S.A. 21-5706(b)(7) makes it a crime to possess 'any substance designated in K.S.A. 65-4105(h),' and K.S.A. 65-4105(h)(1) lists THC. But K.S.A. 65-4105(h)(1) provides a list of exceptions.

> "THC does not include 'tetrahydrocannabinols in any of the following: (A) Industrial hemp, as defined in K.S.A. 2-3901 . . . [and] (C) hemp products, as defined in K.S.A. 2-3901 . . . unless otherwise deemed unlawful pursuant to K.S.A. 2-3908.' K.S.A. 65-4105(h)(1)(A), (C). 'Industrial hemp' means 'all parts and varieties of the plant cannabis sativa L., whether growing or not, that contain a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry weight basis.' K.S.A. 2-3901(b)(7).

> "'Hemp products' means 'all products made from industrial hemp, including, but not limited to, cloth, cordage, fiber, food, fuel, paint, paper, particleboard, plastics, seed, seed meal and seed oil for consumption and any extract from industrial hemp intended for further processing.' K.S.A. 2-3901(b)(4). 'Final "hemp products" may contain a tetrahydrocannabinol concentration of not more than 0.3%.' K.S.A. 2-3901(b)(4). 'Tetrahydrocannabinol concentration' means 'the combined percentage of tetrahydrocannabinol and its optical isomers, their salts and acids and salts of their acids, reported as free tetrahydrocannabinol on a percent by weight basis.' K.S.A. 65-6235(b)(3)."

Accordingly, Jeffrey asserts it is not a crime to possess or use THC unless the percent concentration on a dry weight basis is more than 0.3%. He argues K.S.A. 2-3908(a)(1) makes it a crime to *produce, manufacture, or sell* THC from industrial hemp for human consumption; however, there is no statutory provision making it a crime to *possess* THC from industrial hemp for personal use. Jeffrey cites to K.S.A. 2-3908(d)(2), which states, in pertinent part: "Nothing in this section shall prohibit . . . the . . . use . . .

5

of any hemp product that is otherwise not prohibited by state or federal law." And such hemp products include all products made from industrial hemp, which may contain THC in a concentration not to exceed 0.3%. See K.S.A. 2-3901(b)(4). Thus, Jeffrey asserts it is not illegal to smoke THC derived from industrial hemp.

Be that as it may, this issue ultimately comes down to the sufficiency of the evidence—an inherently factual question—draped in a fair bit of statutory interpretation. In this appeal, "we review the evidence *in a light most favorable to the State* to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We *do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses*." (Emphases added.) *Mendez*, 319 Kan. at 723. Granted, reasonable minds might well conclude the State's evidence here was fairly weak. Still, we agree with the State that both direct and circumstantial evidence reflects Jeffrey possessed unlawful THC when examined under the controlling standard of review. See *State v. Brazzle*, 311 Kan. 754, 767, 466 P.3d 1195 (2020) (Appellate courts "do not distinguish "'between direct and circumstantial evidence'"" when weighing sufficiency.).

Here, the KBI lab analyst testified that the sample she examined contained THC, but no test was done to determine the concentration. We note the State incorrectly asserts the KBI lab analyst testified the substance did not contain large amounts of cannabidiol (CBD) as would be expected in industrial hemp. The KBI lab analyst testified there may have been CBD in the sample, but the concentration was not something she specifically tested for, so she could not say one way or the other. Still, we find this point largely insignificant.

After the parties filed their respective briefs, our Supreme Court issued its decision in *State v. Brown*, 321 Kan. 1, 573 P.3d 237 (2025), which we find instructive to the issues here. *Brown* held: "While the presence of THC in a substance may be relevant to a fact-finder's determination of whether a substance is marijuana, '[p]roof of the presence

of THC is not required to meet the statutory definition of marijuana.'" 321 Kan. at 8. Indeed, this analysis follows the statutory definition of (and exceptions to) marijuana, which is defined as: "[A]ll parts of all varieties of the plant Cannabis whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin." K.S.A. 2023 Supp. 65-4101(aa). The exception at issue in *Brown* provides marijuana does not include "industrial hemp as defined in K.S.A. 2-3901, and amendments thereto, when cultivated, produced, possessed or used for activities authorized by the commercial industrial hemp act." K.S.A. 2023 Supp. 65-4101(aa)(5).

Our Supreme Court concluded:

"[T]he State [was not] required to prove that the substance Brown was charged with distributing was *not* one of the listed exceptions to the definition of marijuana. See *State v. Brazzle*, 311 Kan. 754, 767, 466 P.3d 1195 (2020) (rejecting defendant's argument that the State was charged with the duty of presenting evidence rebutting every exception to illegal possession of oxycodone)." *Brown*, 321 Kan. at 9.

With this direction from our Supreme Court, we are generally persuaded by the State's reliance on decisions from other panels of this court in *State v. Jones*, No. 126,361, 2024 WL 3381655, at *7-8 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 865 (2025); *State v. Franklin*, No. 125,324, 2024 WL 3308183, at *7-8 (Kan. App. 2024) (unpublished opinion); and *State v. Baldwin*, No. 124,442, 2023 WL 5163292, at *3 (Kan. App. 2023) (unpublished opinion). The State asserts Jeffrey's argument was rejected by each of those panels. The State is partially correct; all three cases involved convictions for possession of marijuana, not possession of THC. Still, we observe no meaningful argument by either party that the statutory definition or exceptions to the definition of marijuana under K.S.A. 2023 Supp. 65-4101(aa)(5) are sufficiently distinct from the definition and exceptions for THC under K.S.A. 2023 Supp. 65-4105(h)(1).

We will not endeavor to craft arguments on behalf of either party. To the extent Jeffrey even attempts to make any such point, he asserts, without further explanation or supporting authority: "There is no affirmative defense at play here. When the criminal allegation concerns the possession of THC, the State must prove the defendant possessed illegal THC, and illegal THC is THC that does not come from industrial hemp or a hemp product." A point incidentally raised but not argued is deemed waived or abandoned. "Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue." *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

We follow the same rationale here and focus our inquiry on the sufficiency of the evidence, whether direct or circumstantial.

Turning to the cases cited by the State, the *Baldwin* panel found sufficient circumstantial evidence supported Baldwin's conviction for possession of marijuana based on: (1) the arresting officer's testimony he could smell the odor of marijuana coming from the open car window; (2) the officer's testimony that he found marijuana cigarettes, a "'roach,'" and a cellophane covering from a cigarette pack containing a green substance he identified as marijuana; (3) the officer's testimony he later weighed the marijuana, and it weighed 2.2 grams; (4) while enroute to jail, Baldwin's statement to the officer it "'was a waste of time for two grams of . . . "whatever that is."'"; (5) Baldwin's testimony at trial that did not dispute the substance found in his car was marijuana; and (6) the lab analyst's testimony that the sample "contained THC which is the psychoactive component in marijuana." 2023 WL 5163292, at *5.

Similarly, in *Jones*, the panel explained:

"Jones testified at trial and did not dispute the substances found in the car [were] marijuana. In fact, Jones admitted he planned to purchase marijuana while in Colorado,

8

where he could legally make such purchase at a dispensary, and Jones told the deputy he was coming home from Colorado. Jones admitted he knew possession of marijuana was illegal in Kansas and that he smokes marijuana practically every day using either a pipe or by rolling a joint. Jones also admitted the pipe found in the car was his and was the type of pipe he would typically use to smoke marijuana three or four times per day." 2024 WL 3381655, at *9.

The *Jones* panel held:

"The jury could . . . easily conclude Jones would not have gone to Colorado to buy marijuana (or a similar substance) containing an amount of THC that was lawful in Kansas. Further, the jury could reasonably infer Jones was smoking marijuana with enough THC to produce a psychoactive effect and was not smoking industrial hemp as he suggested." 2024 WL 3381655, at *9.

In *Franklin*, the panel found sufficient circumstantial evidence *would have supported* a conviction for possession of marijuana based on the arresting officer having found a pipe in Franklin's possession, which smelled of burnt marijuana, and Franklin admitting to the officer that he smoked marijuana two days prior. 2024 WL 3308183, at *7. However, the *Franklin* panel found the charge was effectively amended from possession of marijuana to possession of THC because the jury was only instructed on possession of THC. Nevertheless, the jury convicted Franklin of possession of marijuana as alleged in the State's charging document. Thus, although the evidence could have supported a conviction for possession of marijuana, the panel reversed Franklin's conviction and remanded for a new trial in light of the discrepancy between the jury instruction and the charging document. 2024 WL 3308183, at *8. Still, we find this analysis generally informative to the current issue before us.

Here, there is a distinction from *Baldwin*, *Jones*, and *Franklin*, insofar as there is no indication where the THC that Jeffrey possessed came from, nor were there any

statements from Jeffrey about how and where the THC in the pipe tested came from. But we are unpersuaded this makes a difference in our analysis, as we must review the evidence in the light most favorable to the State. *Mendez*, 319 Kan. at 723. Here, the jury heard the officer's testimony that the two pipes Jeffrey possessed were often associated with the use of narcotics. And while it may not have been clear if the residue came from marijuana, the substance tested in one of the two pipes contained THC. The jury was also presented with exhibits of both pipes at trial. But Jeffrey has not included these exhibits in the record on appeal. While the KBI analyst did not know the concentration of THC in the residue, she testified THC was "[t]he active ingredient in marijuana." The jury could draw its own conclusions based on the direct and circumstantial evidence, and we will not disturb its finding that Jeffrey, at the time of his arrest, was in possession of THC.

Going forward, the State could render this a non-issue if the KBI would expand its testing to reflect the concentration of THC in these kinds of cases. We note that under Kansas' Commercial Industrial Hemp Act, K.S.A. 2-3901 et seq., our Legislature required the Kansas Department of Agriculture to develop "a procedure for testing, using post-decarboxylation or other similarly reliable methods, the delta-9 tetrahydrocannabinol concentration levels of industrial hemp produced." K.S.A. 2-3906(b)(2). Thus, it seems the means for testing are readily available, and at least one state agency has them.

*No Jury Instruction Error*

Jeffrey argues the district court erred in failing to instruct the jury on the difference between illegal THC and lawful industrial hemp products.

> "When analyzing jury instructions, appellate courts follow a three-step process:
> (1) determine whether the appellate court can or should review the issue, in other words,
> whether there is a lack of appellate jurisdiction or a failure to preserve the issue for
> appeal; (2) consider the merits of the claim to determine whether error occurred below;

10

and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

"At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record." *Hollins*, 320 Kan. at 242. "In determining whether an instruction was factually appropriate, [appellate courts] must determine whether there was sufficient evidence, viewed in the light most favorable to the requesting party, that would have supported the instruction." *Mendez*, 319 Kan. at 727.

"Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024). If the challenging party preserved the issue below, an appellate court applies one of two harmless error tests. See *State v. Holley*, 313 Kan. 249, 256-57, 485 P.3d 614 (2021). However, when a party fails to object to an instruction or request an instruction be given, we review the instruction to determine if it was clearly erroneous. K.S.A. 22-3414(3). "For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given." *Mendez*, 319 Kan. at 727.

Under the specific facts and circumstances of this case—as well as his briefing of the issue on appeal—Jeffrey has not established an instructional error. We find no statute or caselaw requiring the State to prove the specific concentration of THC and, thus, the instruction would be legally inappropriate. Accordingly, we observe no error.

*The District Court Did Not Make Sufficient Findings to Order an Extended Term of Probation*

Jeffrey finally argues the district court imposed an illegal sentence by failing to make sufficient findings to impose an extended term of 18 months' probation. Whether a sentence is illegal is a question of law over which we exercise unlimited review. Likewise, interpretation of a sentencing statute is a question of law subject to unlimited review. *Daniels*, 319 Kan. at 342.

Jeffrey was convicted of a severity level 5 drug felony, and the standard term of probation for such offense is up to 12 months. See K.S.A. 21-5706(c)(3)(C); K.S.A. 21-6608(c)(3). A sentencing court may increase the term of probation "if the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by the length of the probation . . . ." K.S.A. 21-6608(c)(5). Here, the district court made no such findings prior to pronouncing the term of probation.

Contrary to the State's arguments, the fact the district court ordered Jeffrey to complete a batterer's intervention program as a condition of probation did not reflect a finding with particularized reasons that public safety or Jeffrey's welfare would be better served by an extended term of probation. The district court stated:

> "At some point in time, you're going to have to figure out that running into a brick wall face first isn't the way to handle your business, but I'm not sure you have that capability. I look at your criminal history, and while I get the facts of this case, a jury decided it, you're a litany of battery."

As far as the sentence imposed, the district court simply stated: "So your probation will be for a term of up to 18 months. It will be supervised by Community

12

Corrections." But there was no finding this sentence was because "the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by the length of the probation." K.S.A. 21-6608(c)(5). The district court subsequently stated:

> "It is also a condition of your [probation] that you enter into immediately and complete successfully the Batterer's Intervention Program. The Court makes those findings based upon, not only the facts of this case, but the 206 case and other litany of batteries that I have on file in your case. That class is the best class that I will tell you, other than the drug recovery—the Recovery Court that we have here, that class is full of success. If you invest yourself in that class, you will be better on the back end than you were on the front end and that's my goal. It's my goal, Mr. Jeffrey, that you do that going into probation."

While the batterer's intervention program would certainly serve the interests of both public safety and Jeffrey's welfare, there was nothing stated or implied that completing the program would require Jeffrey to serve 18 months' probation as opposed to 12. Accordingly, we vacate the 18-month term of his probation sentence and remand the case with instructions Jeffrey be resentenced to the applicable term of 12 months' probation. See *State v. Nelson*, No. 123,215, 2022 WL 128861, at *4 (Kan. App. 2022) (unpublished opinion).

Convictions affirmed, sentences vacated in part, and case remanded with directions.